Ricky Lynn BEASLEY, Petitioner,

v.

E–Z MART STORES, INC., Own Risk, and the Workers' Compensation Court, Respondents.

No. 75763.

Court of Appeals of Oklahoma, Division No. 2.

July 9, 1991.

Certiorari Denied Sept. 11, 1991.

John Sprowls, Pauls Valley, for petitioner.

Albert M. Morrison, Oklahoma City, for respondents.

BRIGHTMIRE, Judge.

This is a workers' compensation claim for death benefits emerging from the murder of a twenty-eight-year-old mother of three minor children, who was managing an E–Z Mart convenience store in Davis, Oklahoma, when last seen alive by anyone except her killer.

The trial court denied the widower's claim based on a finding that the employee was "a co-conspirator in a burglary of respondent business, subsequently a fight between the co-conspirators developed and claimant was killed."

The court en banc affirmed. We hold that competent evidence does not support the trial court's finding and vacate the order.

I

On the evening of October 16, 1987, the deceased, Leslie Arlene Beasley, left a note on the kitchen table addressed to her husband, Ricky, in which she expressed her love for him and the kids, and her thanks for his having cleaned the house.[1] She

1.
```
"My dearest Ricky,
 I love you and I love the kids you all
are so special.
 I'm writing this to let you know that I
miss you & I'm thinking about you. You have
been working so hard. Thank you for cleaning
the house too. It sure looked nice. I guess
I ought to get in there & wash dishes but I
will when I get off since I'm off Sunday. I
hope your night went OK. I love you don't
ever forget it either!
 I guess I'll go to sleep now. I love
you. See you in the morning.
 Love forever & always
 Leslie
P.S. A million hugs & kisses & sweet dreams.
 I Love you Bunches
 Leslie
 L O
 V E
 Ricky"
```

wrote such notes quite often because he worked from five in the afternoon until two in the morning and she worked at the convenience store from 7 a.m. until 3 p.m. Therefore notes were about the only way the couple could communicate during the week.

On Saturday morning, October 17, 1987, Ricky was contacted around 8 a.m., and advised that Leslie was missing from the store. He dressed and drove from his home in Sulphur to Davis, arriving a few minutes after eight. He noticed Leslie's car in front of the store. Inside, he heard the cash register alarm was going, and saw the Davis Chief of Police and a lady behind the counter. He noticed one of his wife's shoes at the end of the counter about twenty feet from the front door. The woman reached under the counter and brought Leslie's purse out, which she then set on the counter. It was open and in it Ricky saw his wife's contact lens fluid, her driver's license, some make-up, an envelope containing $65 worth of food stamps, $180 in her billfold, keys to the store and night deposit, and various other personal articles.

The medical examiner stated in the Certificate of Death filed December 17, 1987, that Leslie's body was found December 2, 1987, at 1330 hours "In field 1M W Hwy 1 on Cty Line Rdl Murray Cnty, OK." He noted "head injuries," and that the manner of death was "homicide" resulting from "injury at work."

On January 23, 1988, an information was filed charging a Michael Monroe Hustad, with first degree murder.[2]

This claim was filed March 21, 1988. It was heard March 1, 1990, and denied on the basis of the killer's self-serving conspiracy testimony. The court en banc affirmed.

## II

The claimant states that there is a lack of competent evidence to support the trial court's order.

 The argument is that the only evidence that the decedent conspired with her murderer to rob her employer is the testimony of the killer himself,[3] and that the claimant's objection to Hustad's deposition should have been sustained because, at a critical juncture of the claimant's cross-examination, Hustad invoked the Fifth Amendment and refused to answer. This, contends the claimant, deprived him of his Sixth Amendment right to cross-examine Hustad and rendered the deposition testimony incompetent and therefore inadmissible.

We agree. What Hustad had to gain from his conspiracy story was escaping the death penalty.[4] There was evidence that the respondent's investigator went to South Dakota and later accompanied the sheriff and Hustad back to Murray County, Oklahoma. It was during that trip that Hustad is said to have "confessed" to the conspiracy theory implicating Leslie Beasley as a premeditated accomplice to the robbery/embezzlement plot. Given the fact that only two people knew what actually happened, and one is dead, basic fairness to the claimant requires that he be accorded liberal rights of cross-examination unrestricted by Fifth Amendment refusals to answer.

To provide a foundation for its defense to the claim of Leslie's husband and three minor children, the employer took Hustad's deposition on December 13, 1988, at the penitentiary. By way of background Hustad said he first met Leslie around November 1986 while he worked as a disc jockey at KS101 Radio Station in Sulphur, Okla-

2. The information was later amended after a plea bargain was reached. Hustad pleaded guilty to second degree murder and kidnapping of Leslie Beasley and was sentenced to life in prison, thus escaping the death penalty, by virtue of his conspiracy story.

3. The police officer who brought Hustad back from South Dakota, and helped investigate the case, testified that other than the testimony of Hustad, he knew of no other material evidence to support Hustad's conspiracy story.

4. If Hustad had admitted robbing the convenience store, kidnapping Leslie Beasley and later murdering her at some distant location, he knew he would most likely have little chance of a plea bargain and would likely be faced with the death penalty.

homa, and that their relationship was a "casual" one which grew out of calling the station with requests for certain musical renditions much like many other people would do.

He further testified that at the end of September 1987, he and Leslie agreed that on the morning of October 17, 1987, they would jointly take money from the E–Z Mart store in Davis, split the money 50–50, and leave for South Dakota together. There was no particular reason why October 17 was picked for the plot.

Hustad said Leslie called him at the station at 6:45 a.m. and told him the night employee had left and he called her back at 7:01 and told her he was leaving the radio station where he had put a thirty-minute religious record on to play while he was gone. The deponent said he arrived at Davis a few minutes later and Leslie was waiting at the store door holding a money bag and a twelve-pack of beer. He got out of the car, he said, but he never entered the store. Leslie got into the car and Hustad drove back to the radio station and finished his shift which lasted at least until 10 a.m. He said on the way to the station Leslie was in the front seat with him but no one saw her because she laid down until they reached their destination.

At the time of the deposition Hustad said he was serving a life term in prison which grew out of a plea bargain calling for him to plead guilty to a charge of kidnapping Leslie *at the radio station* and then murdering her.

The undisputed evidence was, however, that no one at the radio station ever saw Leslie. Thus, the important question of why no one saw her loomed large on the circumstantial horizon, and led to the following colloquy during the depositional cross-examination:

"It's your testimony that she [Leslie] intended to forever leave her children and never see them again?" Hustad was asked.

"Yes, sir," he said, "I can reiterate on that a little bit further and tell you a little bit more . . . if you care to hear it."

"No, that's all right. Where was she while you finished your shift at the station?"

"Where was she?" inquired Hustad.

"Yes, sir."

"I'd like," replied Hustad, "to exercise my 5th Amendment rights, if I could, on that question. She was there but—"

Later Hustad denied, of course, that he concocted the conspiracy story to avoid the death penalty, but the circumstances surrounding the entire episode strongly suggest that death would have surely been his punishment if he had been convicted of first degree murder arising out of a store robbery-kidnapping charge. In other words, absent the conspiracy theory there would have been little to plea bargain about.

Later on the cross-examiner soon returned to the Fifth Amendment matter.

"But yet you have chosen to exercise your right pursuant to the 5th Amendment from the time you got back to the station?" Hustad was asked.

"Yes, sir," said Hustad. "That's an area I was advised by my lawyer to because I am doing time and I have confessed to that, per se. I'm doing time for that."

Later Hustad added, "It was explained to me that there was a possibility more charges could be filed. Should I continue?" [5]

At this point the claimant's lawyer entered an objection to the witness's reliance upon his Fifth Amendment rights and "in the alternative certify the questions to the Court for the purpose of instructing the witness to respond to questions relative to what transpired on that day."

Throughout the Fifth Amendment incident, the employer's attorney remained very silent and made no effort to have the witness waive the Fifth Amendment claim. Finally, the witness said in effect that,

**5.** What this suggests is the possibility of criminal perjury charges if he now told a different story about the role Leslie played.

after arriving at the station, Leslie remained there for the next three hours while he finished his shift.

In response to the question of why Hustad went back to the station to finish his shift under the circumstances, he said, "Someone had to do it. I was on the air, scheduled to be on the air. If I wasn't on the air somebody would know it."

He said he didn't call in sick because: "I ran the station. I managed the station.... I ... was off the air by 10:00 o'clock. *It was just a better alibi,*" [6] in case he became a suspect. He continued to work at the station for about a week before leaving for South Dakota.

Later he admitted lying to the police before finally confessing to the killing.

And where was Leslie going to stay while Hustad continued to work a week or two at the radio station?

"She had talked about getting a motel room somewhere close by, you know," said Hustad, "either Ada or Ardmore and just staying in a motel room and making her decision from there, you know, whether she was going to in fact go with me [to South Dakota] or whether she was going to go her own way."

In further testimony Hustad admitted that what he was saying was that Leslie left her automobile and purse behind at the convenience store knowing that she was going to have to use her half of the alleged embezzled proceeds ($1,500) "to obtain transportation, stay in a motel and then get settled someplace else...."

But the enormous question remained: How could it be that Leslie stayed at the station nearly three hours without being seen by any of the people there. Was she then dead or alive? That is the question.

### III

Death benefits should not be denied the surviving three minor children in this case on the basis of testimony of a confessed liar who, with the intent to steal money, admitted driving to the convenience store managed by their mother and who admitted that after the larceny he kidnapped and killed their mother and then chose to preclude cross-examination by claiming Fifth Amendment protection.

We hold such interference with the claimant's constitutional right of cross-examination rendered Hustad's testimony incompetent and that the claimant's objection to the deposition should have been sustained. And since there was no remaining competent evidence that Leslie was unfaithful to her employer, the trial court was obliged to find that she died in the course of her employment.[7] *See In re Death of May,* 586 P.2d 738 (Okl.1978).

The order appealed is vacated and the cause is remanded with directions to award death benefits to the claimant.

REIF, P.J., concurs.

MEANS, J., dissents.

MEANS, Judge, dissenting.

Claimant Ricky Lynn Beasley seeks review of the order of a workers' compensation court three-judge panel denying his claim for death benefits arising from the death of his wife, Leslie Arlene Beasley. Claimant sought benefits for himself and for the parties' three minor children. Having reviewed the record and applicable law, I would affirm.

Leslie Beasley was the manager of the E-Z Mart in Davis, Oklahoma. On October 17, 1987, she was scheduled to work from 7 a.m. until 3 p.m. She was seen in the store by a customer around 7:00, talking on the telephone. She was also seen by another customer around 7:05, but was not on the phone at that time.

Around 8 a.m. Leslie was discovered missing from the E-Z Mart. One of her shoes was on the floor, and her purse was under the counter. Other than the shoe on

---

6. Emphasis added.

7. The court can take judicial notice that it is a matter of common knowledge that people work-ing in convenience stores are constantly in danger of being attacked by robbers and sometimes fatally wounded.

the floor, there were no signs of disarray in the store. Approximately $3,000 had been taken from the store safe. The safe was closed but unlocked. Leslie Beasley had been seen talking on the telephone at the same time a call had been placed from the radio station in Sulphur to the E–Z Mart; another call had been placed from the E–Z Mart to the radio station fifteen minutes before. The back door to the E–Z Mart, which was always kept locked, was open. A red cup, to be placed in the window as an agreed-upon signal of trouble from E–Z Mart employees to the police, had not been moved from its usual place near the cash register.

On December 2, 1987, Leslie Beasley's body was found near a county line road outside Roff, Oklahoma. In January 1988, Murray County officials arrested Michael Hustad in connection with Leslie Beasley's disappearance and death. Hustad had been a radio announcer and program director at KS–101 Radio in Sulphur, Oklahoma. Hustad was charged with alternative counts of murder in the first degree, felony murder involving kidnapping from the radio station in Sulphur, and felony murder in the second degree involving grand larceny from the E–Z Mart, as well as with the underlying crimes of kidnapping and grand larceny. Hustad pleaded no contest to the second degree murder/grand larceny charge and to the kidnapping charge. He is currently incarcerated at Lexington, Oklahoma.

The sole issue presented to the workers' compensation court was the factual question of whether Leslie Beasley was killed while in the course and scope of her employment. Claimant contended that she had been robbed and kidnapped from the E–Z Mart, and killed in the course of commission of those crimes. Employer denied that she had been an employee at the time of her death and asserted that she was "engaged in a criminal conspiracy with a third party [Hustad] to embezzle or steal money from the [Employer] and as a result thereof, she was no longer an employee." Presented as part of Employer's evidence was Hustad's deposition in which he testified to the existence of such a conspiracy

with Leslie Beasley, asserting that she had willingly accompanied him from the E–Z Mart with the intent to leave town and re-establish herself elsewhere with her half of the $3,000 taken from the store. Hustad claimed that she had returned to the radio station with him while he finished his shift. It was established that Leslie Beasley had been killed in the station's garage.

The trial court found that Leslie Beasley "was a co-conspirator in a burglary of respondent business, subsequently a fight between the co-conspirators developed and [she] was killed." The court therefore determined that her death did not arise out of and in the course of employment, and denied the claim for death benefits. This order was affirmed by a three-judge panel. Claimant now seeks our review of this decision.

When reviewing a factual determination of the worker's compensation court, this court's responsibility "simply is to canvass the facts, not with an object of weighing conflicting proof in order to determine where the preponderance lies but *only* for the purpose of ascertaining whether the tribunal's decision is supported by competent evidence." *Parks v. Norman Mun. Hosp.*, 684 P.2d 548, 552 (Okla.1984).

Claimant's sole proposition on appeal is that the trial court erred in admitting Hustad's deposition testimony. During Claimant's cross-examination, Hustad was questioned regarding Leslie Beasley's whereabouts after allegedly returning with him to the radio station. In response, Hustad asserted his Fifth Amendment right against self-incrimination. Claimant argues that, because he was deprived of the right to cross-examine Hustad along this line, Hustad's deposition testimony should have been stricken by the court. Absent the deposition, Claimant concludes, there is no competent evidence to support a finding that Leslie Beasley was not kidnapped from the E–Z Mart.

Even disregarding Hustad's deposition, there is sufficient competent evidence in the record by which the court could find that Leslie Beasley willingly left the E–Z

Mart of her own accord, taking with her $3,000 from the safe. In addition to the physical evidence found at the E–Z Mart at the time Leslie was discovered missing, all law enforcement personnel testified that their investigations showed no evidence to support a charge of kidnapping from the E–Z Mart against Michael Hustad. There was also evidence of infidelity on the part of both Beasleys, establishing additional motives for Leslie Beasley to steal money and disappear.

While the workers' compensation laws are to be liberally construed, the burden is still upon a claimant to prove the elements of his claim. *Armco, Inc. v. Holcomb*, 694 P.2d 937, 939 (Okla.1985). The existence of evidence upon which a factfinder could have reached a different conclusion is immaterial to review on appeal. *Iwunoh v. Maremont Corp.*, 692 P.2d 548, 549 (Okla. 1984). Where there is competent evidence, though conflicting, reasonably tending to support the trial court's decision, that decision will not be disturbed on appeal. *Bittman v. Boardman Co.*, 560 P.2d 967, 969 (Okla.1977).

The order of the three-judge panel should be affirmed.